**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| **PAULA MELVILLE,** | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | ) **C.A. NO. 13-cv-30051-MAP** |
| | ) |
| **TOWN OF ADAMS,** | ) |
| **et al.,** | ) |
| **Defendants.** | ) |

**MEMORANDUM AND ORDER RE:**
**REPORT AND RECOMMENDATION WITH REGARD TO**
**DEFENDANTS' MOTIONS TO DISMISS**
**(Dkt. Nos. 11, 13, 18, 30, 35, 52 & 61)**

**March 27, 2014**

**PONSOR, U.S.D.J.**

## I. INTRODUCTION

**Plaintiff Paula Melville, a former elected member of the Town of Adams Board of Selectmen ("the Board"), brought this twenty-one count suit challenging certain restrictions the Board imposed upon her during her tenure. Defendants are: the Town of Adams; Michael Ouellette, member of the Board; Arthur Harrington, member of the Board; Jason Hnatonko, member of the Board; Scott Nichols, member of the Board; Jonathan Butler, Adams Town Administrator; Erica**

Samson, Director of the Council on Aging of the Town of Adams; Donald Poirot, Chief of Police of the Town of Adams; the law firm of Mirick, O'Connell, Demallie & Lougee, LLP; Corey Higgins, Special Counsel for the Town of Adams; Demitrois Moschos, Special Counsel for the Town of Adams; AFSCME Counsel 93, AFL-CIO; Nadine Kennedy, Staff Representative to the Clerical Unit of the Town of Adams; The Massachusetts Office of the Attorney General; Jonathan Sclarcis, Assistant Attorney General; the Berkshire County's Sheriff's Office; and Ronald Clark, Process Server in the Civil Process Division. In April and May 2013, Defendants filed a number of motions to dismiss. (Dkt. Nos. 11, 13, 18, 30, 35, & 52.) The court referred these motions to Magistrate Judge Kenneth P. Neiman for report and recommendation ("R&R").

On January 10, 2014, Judge Neiman issued his R&R, to the effect that Defendants' motions be allowed in part and denied in part. (R&R, Dkt. No. 61.) Specifically, he proposed that all claims and all Defendants be dismissed, except for Counts I, II, III, V, XII, XVI, XX and XXI, as alleged against Defendants Ouellette, Harrington, Hnatonko,

-2-

**Nichols, and the Town of Adams.**

Upon <u>de novo</u> review, 28 U.S.C. § 636(b), and after consideration of the parties' objections, the court will adopt the Magistrate Judge's recommendation for the reasons set forth below.

## II. FACTS

The facts of the case are set forth in detail in the R&R at pages 4-13. The essential background, as drawn from the complaint, (Dkt. No. 1), is at this point not in dispute. The facts relevant to this memorandum are as follows.[1]

Plaintiff was elected to the Board on May 3, 2010. On February 25, 2011, Plaintiff received her copy of the Town Administrator's 2012 proposed budget. At least part of the budget was to be treated as confidential. The proposed budget, if adopted, was going to impose significant cuts to the Adams' Council on Aging, and, as a result, several employees would face termination.

On February 28, 2011, Plaintiff, disturbed by the

_____

[1] Several of Plaintiff's claims stem from peripheral issues. Those discrete incidents are mentioned, when necessary, in the discussion section below.

proposed budget, visited the Council on Aging. There, she allegedly made comments about the proposed cuts to those employees who would be affected by them. Upon learning of the comments, other members of the Board were concerned that Plaintiff had revealed confidential information. They were also troubled that Plaintiff's conversations occurred outside the presence of the employees' union representative.

As a result of these concerns, the Board, also on February 28, 2011, called an emergency meeting to address Plaintiff's comments. Notice of the meeting came to Plaintiff only two hours prior to its commencement and informed her that there would be a "discussion of the charges/allegations concerning [Plaintiff]." Plaintiff did not attend the meeting.

Assisted by Attorney-Defendants Higgins and Moschos, the Board adopted four orders. Order One disavowed Plaintiff's comments about the proposed budget, in an attempt to eliminate any prospect of municipal liability. Order Two directed Plaintiff not to discuss "town business" directly with town department heads or any other town employee without the permission of the Town Administrator.

-4-

Order Three, finding Plaintiff to have released confidential information, referred her to the State Ethics Commission. Order Four prohibited Plaintiff from entering town department premises without the prior permission of the Town Administrator. This final order exempted the town hall, police stations, the library, town parks, recreation departments, and the Board's chambers.

In April 2011, the Board voted to privately censure Plaintiff for the February incident. On May 9, 2012, Plaintiff resigned from the Board after an election in which she was not on the ballot.

On February 27, 2013, Plaintiff brought this suit against Defendants, predominantly targeting the orders issued at the February 28, 2011, emergency meeting. In April and May 2013, Defendants filed a number of motions to dismiss, contending that Plaintiff failed adequately to plead any cause of action. The Magistrate Judge, on January 10, 2014, issued his R&R on those motions. On January 24, 2014, Plaintiff filed her objection to the R&R, (Dkt. No. 62), which was rebutted by several Defendants, (Dkt. Nos. 70 & 71). Then, on February 7, 2014, Defendants Butler,

**Harrington, Hnatonko, Nichols, Ouellette, Poirot, Samson,**
**and the Town of Adams, filed their own objection to the R&R.**
**(Dkt. No. 73.)   These objections are now before the court.**

### III.   DISCUSSION

**A motion to dismiss will be denied if Plaintiff's**
**complaint contains "sufficient factual matter" to sustain a**
**claim for relief that is actionable as a matter of law and**
**"plausible on its face."   Ashcroft v. Iqbal, 556 U.S. 662,**
**668 (2009), citing Bell Atl. Co. v. Twombly, 550 U.S. 544,**
**570 (2007); Fed. R. Civ. P. 12(b)(6).   If a complaint fails**
**to set forth "factual allegations, either direct or**
**inferential, respecting each element necessary to sustain**
**recovery under some actionable legal theory," then dismissal**
**is appropriate.   Centro Medico del Turabo, Inc. v. Feliciano**
**de Melecio, 406 F.3d 1, 6 (1st Cir. 2005)(internal citations**
**omitted).**

### A.   Due Process and Rules of Professional Conduct Claims Against Attorney Defendants

**In response to the emergency meeting, Plaintiff filed a**
**complaint pursuant to the Open Meeting Law with the Office**
**of the Massachusetts Attorney General.   M.G.L. ch. 30A, §**
**23(f).   In her complaint now before this court, Plaintiff**

has asserted a due process claim against the Office of the Massachusetts Attorney General and Defendant Sclarcis for taking six months to respond to that filing (Count XIV). The Magistrate Judge recommended that the claim be dismissed as Plaintiff failed to oppose Defendants' motion, the Eleventh Amendment barred the suit, and qualified immunity shielded Defendants.

Plaintiff also brought two claims under the Massachusetts Rules of Professional Conduct against Defendant Higgins, Defendant Moschos, and the law firm of Mirick, O'Connell, Demallie & Lougee, LLP, for their role in assisting the Board at the emergency meeting (Counts X and XI). The Magistrate Judge also recommended that these counts be dismissed as Plaintiff did not oppose Defendants' motions, and the Rules of Professional Conduct do not create an independent cause of action. See Fishman v. Brooks, 396 Mass. 643, 649 (1986). The counts could also not be construed as claims for legal malpractice, as Plaintiff did not allege any attorney-client relationship. See DeVaux v. Am. Home Assurance Co., 387 Mass. 814, 817 (1983).

Neither side objects to the Magistrate Judge's

persuasive analysis on these claims. Noting the lack of
objection, and agreeing with the conclusions, the court will
adopt the recommendation and dismiss Counts X, XI, and XIV.

B.  **Substantive Due Process Claims Against Union Defendants**

Following the events of February 28, 2011, Defendant
Kennedy made statements disapproving of Plaintiff's actions
and supporting the Board's response. As a result, Plaintiff
alleged a substantive due process claim against Defendants
AFSCME Council 93, AFL-CIO, and Defendant Kennedy (Count
XVII). In Plaintiff's view, Defendant Kennedy's statements
gave credence to the other allegedly unlawful events.
However, as the Magistrate Judge noted, Plaintiff did not
allege any state action or any conduct that "shocked the
conscience" to sustain a substantive due process claim. See,
e.g., Harron v. Town of Franklin, 660 F.3d 531, 536 (1st Cir.
2011).

Though Plaintiff objects, (Pl.'s Objections 3-4, Dkt.
No. 62), the court agrees that the absence of state action or
sufficiently shocking conduct is fatal to this claim. It
will therefore adopt the recommendation and dismiss Count
XVII.

## C. Claims Against the Berkshire County Sheriff's Office and Ronald Clark

Though Plaintiff named these two Defendants, she failed to raise any specific claim against them. Instead, she stated that they were liable merely for their role in giving her notice about the February 28, 2011, emergency meeting. The Magistrate Judge, after considering the complaint as a whole, determined that these two Defendants should be dismissed from the case as no cause of action could survive against them.

Because the court agrees, and despite Plaintiff's objection, (Pl.'s Objections 4-8, Dkt. No. 62), the court will adopt the Magistrate Judge's recommendation and dismiss these parties from the case.

## D. Whistleblower Claim Against Defendant Poirot

Plaintiff brought a claim under M.G.L. ch. 149, § 185, arguing that Defendant Poirot, the chief of police, violated the Commonwealth's whistleblower statute (Count VI). Plaintiff charges that by stating that Order Four -- the no-trespass order -- was enforceable through police action, Defendant Poirot purportedly violated the statute. The Magistrate Judge responded to that argument by recommending

-9-

that this claim be dismissed because, quite simply, the
complaint does not allege that Defendant Poirot was
Plaintiff's employer as required under the law. M.G.L. ch.
149, § 185(b).

Since no allegations support the conclusion that
Defendant Poirot was Plaintiff's employer, the court will
adopt the Magistrate Judge's recommendation and dismiss Count
VI.

## F.    Violation of Open Meeting Law, Defamation, Equal Protection, False Light, and Retaliation Claims Against Municipal Defendants

Plaintiff asserted a number of counts against Defendants
The Town of Adams, Ouellette, Harrington, Hnatonko, Nichols,
Butler, Samson, and Poirot. The Magistrate Judge recommended
dismissal as to several of these.

First, the Magistrate Judge recommended that the court
dismiss Plaintiff's "Open Meeting Law" claim, (Count IV), as
M.G.L. ch. 30A, § 23(f) only permits enforcement by "the
attorney general or 3 or more registered voters." Plaintiff
cannot sustain the action on her own.

Second, the Magistrate Judge recommended dismissal of
Plaintiff's defamation claims (Counts VII and VIII). Since

-10-

Plaintiff, during the relevant period, was a member of the Board, and therefore a "public figure," she can only sustain a claim for defamation by alleging facts sufficient to demonstrate "actual malice" on the part of Defendants. **See New York Times v. Sullivan**, 376 U.S. 254, 279-80 (1964). No such facts appear in the complaint. Moreover, it was unclear which statements she claimed were false, nor was it evident that any statement was actually defamatory in nature.

Next, Plaintiff alleged a violation of the equal protection clause (Count XIII). Plaintiff not only failed to oppose the motion to dismiss that count, but she did not allege, nor can it be inferred, that any similarly situated individual was treated any differently.

In Count XVIII, Plaintiff accused Defendants of putting her in a "false light." As the Magistrate Judge correctly stated, however, Massachusetts does not recognize such a cause of action. **Ayash v. Dana-Farber Cancer Inst.**, 443 Mass. 367, 681 n.16 (2005), citing **ELM Med. Lab., Inc. v. RKO Gen., Inc.**, 403 Mass. 779, 787 (1989)(further citation omitted).

Finally, the Magistrate Judge proposed that Plaintiff's

-11-

claim for retaliation against a public official be dismissed
(Count XIX). Not only was the source of law justifying the
claim unclear, but Plaintiff could not establish the elements
for a common-law count since she was not a "traditional"
employee alleging that her employment was terminated contrary
to public policy.

The court concurs with the Magistrate Judge as to each
of these claims and will therefore dismiss counts IV, VII,
VIII, XIII, XVIII and XIX.

## G.  First Amendment Claims

Plaintiff's First Amendment claims arise from two of the
orders issued against her at the emergency meeting.[2]  Counts
XII and XVI challenge the order prohibiting Plaintiff from
communicating with others about "town business," and Counts
XX and XXI target the no-trespass order.[3]  The Magistrate

_____

[2] Though the claims were brought against a number of
Defendants, the Magistrate Judge determined that Plaintiff
could only sustain them against Defendants Ouellette,
Harrington, Hnatonko, Nichols, and the Town of Adams.  This
court agrees, despite Plaintiff's objection, that these
parties are the only ones conceivably responsible for the
alleged First Amendment violations.

[3] Plaintiff also asserted a fifth First Amendment claim
dealing with a change in the Board's handbook that was made
following the relevant incidents (Count XV).  The Magistrate

-12-

Judge, employing a three-step analysis, determined that these constituted plausible claims and should, at least, move forward to discovery.

First, the Magistrate Judge considered the extent to which the First Amendment protected Plaintiff in her capacity as an elected official. Defendants argued that Pickering v. Bd. of Educ., 391 U.S. 563 (1968), and Garcetti v. Ceballos, 547 U.S. 410 (2006), limited Plaintiff's free speech rights and justified the Board's actions. See Garcetti, 547 U.S. at 421 (stating "when public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline"). The Magistrate Judge, however, relying on Bond v. Floyd, 385 U.S. 116 (1966), and Miller v. Hull, 878 F.2d 523 (1st Cir. 1989), concluded that Pickering and Garcetti did not apply to elected officials, in contrast to non-elected public employees. See Bond, 385 U.S. at 135 (concluding that a legislator, speaking in her official

_____

Judge correctly concluded that the count should be dismissed as Plaintiff cannot show how the change affected her or infringed upon her rights in any way.

-13-

capacity on issues of public policy, was protected by the First Amendment); Miller, 878 F.2d at 532 (concluding that a legislator's right to vote freely on issues was protected under the First Amendment).  Although this question has yielded inconsistent results across the federal courts, the Magistrate Judge found that, Plaintiff, as an elected representative, had a cognizable free speech right.  Compare Conservation Comm'n of the Town of Westport v. Beaulieu, 2008 WL 4372761 at *4 (D. Mass. Sept. 18, 2008)(finding Garcetti inapplicable to "public officials"), with Shields v. Charter Twp. of Comstock, 617 F. Supp. 2d 606, 615-16 (D. Mich. 2009)(applying Garcetti to elected officials).

Critically, the Magistrate Judge determined that even under Pickering and Garcetti, Plaintiff's claims could move forward.  (R&R 24-25, Dkt. No. 61.)  Under those cases, and assuming that an elected official is to be treated the same as a non-elected public employee, a court must balance the employee's interest in free expression with the government's interest as an employer. Pickering, 391 U.S. at 568 ("The problem in any case is to arrive at a balance between the interests of the [employee], as a citizen, in commenting upon

-14-

matters of public concern and the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees."). Construing the allegations of the complaint generously, Judge Neiman concluded that, given the arguably excessive breadth of the orders, Plaintiff had articulated a cognizable free speech claim even if she were treated as a mere public employee.

After determining that the First Amendment protected Plaintiff to some extent, the Magistrate Judge concluded that Defendants plausibly violated those rights. The Judge emphasized that the orders in this case were content-based restrictions -- focusing on "town business" -- thereby increasing the court's obligation to scrutinize them with special care. More importantly, both orders constituted prior restraint on speech and assembly, arguably making them presumptively unconstitutional. U.S. v. Nat'l Treasury Emp. Union (NTEU), 513 U.S. 454 (1995).

At the final step of the analysis, the Magistrate Judge determined that qualified immunity did not protect Defendants. Though the question of the import of Garcetti was unsettled, a reasonable officer would have understood

-15-

that prior restraints were presumptively unconstitutional.
Thus, the orders here could have implicated Plaintiff's First
Amendment rights.

Defendants' objection is anchored on the Magistrate
Judge's decision to deny qualified immunity. They argue that
the law here -- specifically whether Plaintiff had any First
Amendment rights -- was not clearly established.
Furthermore, Defendants say, the Magistrate Judge defined the
"right" -- being free from unconstitutional prior restraints
-- too broadly. The "right," instead, should have been
narrowly tailored to the specific fact pattern presented.

The question of whether qualified immunity applies here
is close. The key question is whether a reasonable official
could have believed his or her actions were lawful in light
of clearly established law and the information known at the
time regarding the allegedly unconstitutional conduct.
McBride v. Taylor, 924 F.2d 386, 389 (1st Cir. 1991). In
this circuit, a court must decide: (1) whether the facts
alleged or shown by the plaintiff make out a violation of a
constitutional right and (2) whether the right was "clearly
established" at the time of the defendant's alleged

-16-

violation.  MacDonald v. Town of Eastham, -- F.3d --, 2014 WL
944707 at *2 (1st Cir. March 12, 2014).

This court, looking solely at the four corners of the
complaint, is persuaded by the Magistrate Judge's
determination.  Even assuming Pickering and Garcetti apply,
which is not self evident, Plaintiff has asserted, at this
point, a valid, clearly established, First Amendment claim.
Under the Pickering balancing act, a court should look to:
"(1) the time, place and manner of the employee's speech, and
(2) the employer's motivation in making the adverse
employment decision."  Decotiis v. Whittemore, 635 F.3d 22,
35 (1st Cir. 2011)(citation and internal quotations omitted).
As the First Circuit has said, this requires "a hard look at
the facts of the case, including the nature of the employment
and the context in which the employee spoke."  Id.

Here, given the broad prior restraint on speech and
assembly allegedly imposed by some Defendants, Plaintiff's
interests plausibly outweigh the Board's need to disavow
Plaintiff's comments.  See NTEU, 513 U.S. at 467 n.11.  At
this very early stage of the litigation, absent evidence
unearthed through discovery, the court must conclude that

-17-

Plaintiff has plausibly shown that her First Amendment claims have merit.

Though the court reaches this conclusion now, Defendants may ultimately be entitled to qualified immunity if, under Pickering and Garcetti, their interests outweigh the Plaintiff's. This inquiry is highly fact specific and necessarily requires the court to look beyond Plaintiff's pleadings and at a fully developed record. The court will thus be better suited to weigh the question of qualified immunity on these limited claims at the summary judgment stage. See, e.g., Giragosian v. Bettencourt, 614 F.3d 25, 29 (1st Cir. 2010)("It is not always possible to determine before any discovery has occurred whether a defendant is entitled to qualified immunity, and courts often evaluate qualified immunity defenses at the summary judgment stage."); Howe v. Town of N. Andover, 784 F. Supp. 2d 24, 31 (D. Mass. 2011).

For the foregoing reasons, the court will adopt the Magistrate Judge's recommendation as to these counts, and permit them to move forward.

H.  Procedural Due Process Claims

Plaintiff's final claims stem from alleged violations of her procedural due process rights. She claims that she was not provided sufficient notice before the emergency hearing occurred, (Count I), that the two hours notice prevented her from obtaining an attorney, (Count II), that she was not informed of her rights before the hearing, (Count III), and that the Board failed to explain how she engaged in inappropriate action before entering the orders, (Count V).[4] The Magistrate Judge agreed that Plaintiff had in fact raised four possible procedural due process claims.[5]

To reach this conclusion, the Magistrate Judge found that Defendants plausibly infringed upon Plaintiff's rights -- particularly her interest in free speech. At a minimum then, though the court did not go into detail, some type of process was required. (R&R 33-34 (citing cases), Dkt. No. 61.) The haste of Defendants' action was manifested, the

_____

[4] Plaintiff asserted a fifth procedural due process claim, (Count IX), but the Magistrate Judge correctly noted that Plaintiff failed to actually allege any constitutional violation.

[5] The Magistrate Judge again correctly limited these claims to Defendants Ouellette, Harrington, Hnatonko, Nichols, and the Town of Adams.

-19-

court reasoned, by Orders Two through Four. If the Board's concern was solely to escape liability, it could have issued Order One disavowing Plaintiff's statements and, then, provided additional process before taking any other step. The Magistrate Judge also decided that Plaintiff had a clearly established right to be heard at a meaningful time and in a meaningful way, and therefore qualified immunity did not protect Defendants.

Defendants object to this conclusion by again raising the shield of qualified immunity. In their view, the court's framing of the violated "right" -- to be heard at a meaningful time and in a meaningful way -- was again too broad. Moreover, a reasonable Board member could have concluded that Plaintiff was not protected by the First Amendment, and therefore Defendants actually provided more process than necessary. Indeed, Defendants point out that the Office of the Attorney General found the emergency meeting appropriate given the harm Plaintiff's statements caused, thus illustrating the reasonableness of the action.

This question is again close. Defendants may be able to establish that their actions were reasonable under the

circumstances and that the process provided was adequate. However, taking the complaint as true, it is at least plausible that Plaintiff's due process rights were violated in the four ways asserted. At summary judgment, the court will have a record to assist it in determining the employer's interests and the reasonableness of Defendants' conduct. Since the precise nature of the due process Plaintiff may be entitled to mandates a fact-specific, balancing inquiry, see Matthews v. Eldridge, 424 U.S. 319 (1976), the issue is not yet ripe for adjudication.

At this point, it is plausible that Defendants violated Plaintiff's clearly established rights. Thus, the court will adopt the Magistrate Judge's recommendation over Defendants' objections.

## IV.  CONCLUSION

For the reasons set forth above, the Report and Recommendation of the Magistrate Judge (Dkt. No. 61), upon de novo review, is hereby ADOPTED in its entirety. Defendants' Motions to Dismiss (Dkt. Nos. 11, 13, 18, 30, 35, & 52) are ALLOWED, except as to the First Amendment claims in Counts XII, XVI, XX, and XXI and the due process claims in Counts I,

-21-

II, III and V, as asserted against Defendants Ouellette, Harrington, Hnatonko, Nichols, and the Town of Adams.

The clerk will set this matter for a pretrial scheduling conference before Magistrate Judge Kenneth P. Neiman pursuant to Fed. R. Civ. P. 16.

It is So Ordered.

**MICHAEL A. PONSOR**
U. S. District Judge